FILED

06/03/2022

Clerk of the
Appellate Courts

THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 25, 2022

## GARY RAY WELDEN v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Campbell County**
**No. 18059    E. Shayne Sexton, Judge**

———————————————

### No. E2021-00772-CCA-R3-PC

———————————————

The Petitioner, Gary Ray Welden, appeals from the Campbell County Criminal Court's denial of his petition for post-conviction relief from his conviction for solicitation of a minor to engage in aggravated statutory rape and his one-year sentence. On appeal, the Petitioner contends that the post-conviction court erred by denying relief on his ineffective assistance of counsel claims. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and JILL BARTEE AYERS, J., joined.

Thomas J. Tabor, Jr., Tazewell, Tennessee, for the appellant, Gary Ray Welden.

Herbert H. Slatery III, Attorney General and Reporter; Edwin Alan Groves, Jr., Assistant Attorney General; Jared R. Effler, District Attorney General; Lindsey Cadle, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Petitioner's conviction relates to his involvement with the minor victim, who was age fourteen at the time of the offense and was dating the Petitioner's son. The trial evidence showed that the Petitioner contacted the victim on Facebook and that they engaged in "small talk" for a period of time. Ultimately, the Petitioner requested the victim's cell phone number, and she provided it to him. The Petitioner instructed the victim not to tell his son about their communications. Between December 31, 2014, and January 4, 2015, the Petitioner and the victim exchanged frequent text messages, photographs of which were received as an exhibit. In the messages, the Petitioner initially flirted and expressed his desire to hold and hug the victim. However, the Petitioner's stated desires

escalated to kissing her and culminated in his attempts to convince the victim to meet him at a park for intercourse.

During the police investigation, the Petitioner provided a statement, in which he said that he exchanged text messages with the victim and that their conversations were "inappropriate and that he let them go too far." The Petitioner stated that he and the victim had "sexual conversations" and that he "wish[ed] he had not let it go that far." The Petitioner denied that he intended to meet the victim for intercourse. He believed she was age sixteen. However, at the trial, the Petitioner testified that he thought his son was going to ruin his son's life by impregnating the victim and that he wanted to show his son "what kind of girl he thought was marriage material," which did not include the victim. The Petitioner was convicted of solicitation of a minor to engage in aggravated statutory rape, and he received a one-year sentence. The Petitioner appealed, and this court denied relief. *See State v. Gary Ray Weldon*, No. E2017-01474-CCA-R3-CD, 2018 WL 3343593, at *1-6 (Tenn. Crim. App. July 9, 2018).

On November 27, 2018, the Petitioner filed a pro se petition for post-conviction relief, alleging that he received the ineffective assistance of trial counsel. The petition failed to provide any factual basis to support his ineffective assistance claims, and as a result, the post-conviction court dismissed the petition. However, after the court received the Petitioner's handwritten letter stating the factual grounds to support his ineffective assistance claims, the court determined that the Petitioner had alleged a colorable claim and appointed post-conviction counsel, who filed an amended petition for relief. The evidentiary hearing was held on June 10, 2021, nearly one year after trial counsel's death.

Appellate counsel testified that he was appointed after the Petitioner's trial because the trial court granted the Petitioner's request to "discharge" trial counsel. Appellate counsel stated that he represented the Petitioner at the sentencing hearing, the motion for new trial hearing, and on appeal from the conviction. Counsel said trial counsel provided him with "some" of trial counsel's file. Counsel said that he reviewed the trial transcript and discussed the case with the Petitioner. Counsel said that in his motion for new trial, he raised claims related to trial counsel's objections, which were few, and alleged that the Petitioner had been denied a fair trial.

Appellate counsel testified that at the trial, the State offered into evidence photographs of text messages exchanged between the Petitioner and the victim and that trial counsel objected on the basis of relevance. Appellate counsel stated that in the motion for new trial, he attempted to argue that the messages were hearsay and were not properly authenticated. Counsel recalled that the photographs were admitted based upon the victim's testimony that the messages were received from the Petitioner and that no evidence was presented to establish the cell phone number belonged to the Petitioner. Counsel said that the record contained no evidence that the prosecution subpoenaed the

Petitioner's phone records. Counsel said that the trial court determined that his allegations in the motion for new trial were waived for the failure to raise the objections at the trial.

Appellate counsel testified that during the Petitioner's trial testimony, a jury-out hearing was held and that the Petitioner told the trial court that trial counsel was in possession of "things" the Petitioner wanted introduced as evidence but that trial counsel had not provided the items to the State during the discovery process. Appellate counsel said that the Petitioner provided him with screenshots from Facebook, newspaper clippings, and "things of that nature." Counsel recalled that the State said at the jury-out hearing and at the motion for new trial hearing that it had not received anything from trial counsel.

Appellate counsel testified that trial counsel did not subpoena any defense witnesses and that there was a discussion at the trial about whether the Petitioner's son had been served with a subpoena.

Appellate counsel testified that trial counsel did not appear to have spent much time with the Petitioner in preparation for the trial because the Petitioner did not understand "what was going on or had occurred." Counsel said that the Petitioner did not think trial counsel investigated the case and that although the Petitioner had created a "file" containing information the Petitioner wanted presented at the trial, trial counsel had not submitted anything to the State as required by reciprocal discovery. Counsel said that because trial counsel had not provided the contents of the Petitioner's file to the State, the information was excluded at the trial.

On cross-examination, appellate counsel testified that the Petitioner requested to serve his sentence, despite appellate counsel's objection. Counsel agreed that authentication of evidence was "a low threshold" and that the victim testified she knew the cell phone number reflected in the text messages belonged to the Petitioner. Counsel agreed that the photographs of the text messages could have been admissible hearsay as an admission by a party-opponent if the evidence established that the Petitioner was the person who sent the messages to the victim. Counsel said that he could not state that the outcome of the trial would have been different if trial counsel had provided reciprocal discovery to the State. Appellate counsel said that he did not know how the outcome of the trial would have been different if trial counsel had subpoenaed the Petitioner's son as a defense witness.

On redirect examination, appellate counsel testified that although he could not state with certainty whether the trial court would have sustained a hearsay objection to the admission of the photographs of text messages, he thought trial counsel's relevancy objection was an improper legal basis.

The Petitioner testified that after retaining trial counsel, they met once at counsel's office and that they did not discuss preparing for the trial. The Petitioner stated that he and counsel spoke on the telephone three times and that the discussions each lasted five to ten minutes. He said he did not receive any written correspondence from counsel. He said that he gave counsel a file containing information about the case and thirteen potential character witnesses. He said that on the day of the trial, counsel reviewed the contents of the file but that counsel had not provided the information to the prosecutor.

The Petitioner testified that none of the information contained in the Petitioner's file was presented at the trial. He said that during his testimony, three jury-out hearings were held to discuss the file's contents and that the trial court prohibited the Petitioner from mentioning the information. The Petitioner said that trial counsel did not object during the Petitioner's cross-examination.

The Petitioner testified that trial counsel did not provide him with any copies of subpoenas for defense witnesses. The Petitioner said that counsel knew the Petitioner's son "had been subpoenaed by a business card," stating the date and time to appear for the trial. The Petitioner said that the prosecutor had subpoenaed the Petitioner's son, that the prosecutor had "released" the Petitioner's son, that counsel called the Petitioner's son as a defense witness, and that the Petitioner's son did not testify at the trial because the defense had not subpoenaed the son.

The Petitioner testified that at the trial, Detective Jeffers stated that the Petitioner had written a statement during the police interview and that the statement was read to the jury. The Petitioner said he did not write the statement. He identified the statement, and it was received as an exhibit. He did not recall trial counsel's objecting to the admission of the statement. The Petitioner stated that Detective Jeffers wrote the statement. The Petitioner acknowledged that Detective Jeffers testified at the trial that Detective Jeffers wrote the statement and that the Petitioner signed it.

The post-conviction court denied relief at the conclusion of the evidentiary hearing. The court found that no evidence was presented regarding the contents of the file provided by the Petitioner to trial counsel. In connection with the potential character witnesses, the court found that no one could determine whether trial counsel would have presented any witnesses because character witnesses could open the door "to a whole lot of other things" and that an attorney might decline to present character witnesses as a matter of strategy. The court stated that it could not determine without the contents of the file whether trial counsel and the Petitioner discussed potential character witnesses and whether counsel made a strategic decision not to present such evidence. The court asked if the defense possessed the contents of the file, and the Petitioner stated, "There is a copy left." We glean from the discussion at the post-conviction hearing that although a duplicate file existed, the file was not in the courtroom during the hearing, and it was not received as an

exhibit. The court determined that the "basic ruling" during the trial was that introduction of the information contained in the file was prohibited because it had not been provided to the prosecution. The court stated that it did not know what trial counsel possessed and that the contents of the file should have been produced at the post-conviction hearing.

The post-conviction court determined with regard to the Petitioner's police statement that trial counsel did not object to its admission. The court determined that although the Petitioner did not draft the statement, he adopted the statement as his own by signing it.

The post-conviction court found that the chosen defense theory, at least in part, was the Petitioner wanted to "prove a point to his son" with regard to the victim. The court found that the State had subpoenaed the Petitioner's son and released him and that trial counsel only "[gave] a business card" to the Petitioner's son. The court found that the Petitioner did not present the son's testimony at the post-conviction hearing and that, as a result, he could not establish his ineffective assistance claim on this basis.

The post-conviction court determined that trial counsel's representation "was questionable" and noted its concern that counsel did not provide the prosecution with anything during the discovery process. The court determined that the Petitioner had failed to establish his ineffective assistance of counsel claims.

After the post-conviction hearing, the post-conviction court entered an order denying relief. The written order only stated that the Petitioner's claims "are not credibly supported and that the [Petitioner] has not established that trial counsel's ineffective assistance, if any, prejudiced the proceedings in such a way to change the outcome of the trial." *See* T.C.A. § 40-30-111(b) (2018) (requiring the entry of a written order or memorandum setting forth all of the grounds for post-conviction relief, along with the court's findings of fact and conclusions of law for each ground); *see also State v. Higgins*, 729 S.W.2d 288 (Tenn. Crim. App. 1987) (concluding that although the post-conviction court's written order failed to reflect findings of fact and conclusions of law for each ground for relief, the court "orally pronounced" its findings and conclusions from the bench, rendering the lack of statutory compliance harmless error). This appeal followed.

The Petitioner contends that the post-conviction court erred by denying relief on his ineffective assistance of counsel claims. The State responds that the court did not err by denying relief because the Petitioner failed to establish his claims by clear and convincing evidence. We agree with the State.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2018). A

petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2018). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

## A.     Photographs of Text Messages

The Petitioner asserts that trial counsel failed to object to the admission of the photographs of text messages exchanged between the Petitioner and the victim. The Petitioner argues that although counsel objected for relevancy, counsel should have

objected on the grounds that the messages were not properly authenticated and were inadmissible hearsay.

"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims." Tenn. R. Evid. 901(a). Evidence may be authenticated by witness "[t]estimony that a matter is what it is claimed to be." *Id*. at 901(b)(1).

Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Id*. 801(c). Hearsay is inadmissible unless it qualifies as an exception. *Id.* at 802. One exception is an admission by a party-opponent, which is defined, in relevant part, as "[a] statement offered against a party that is the party's own statement in either an individual or representation capacity." *Id*. 803(1.2)(A).

At the trial, the victim testified that the messages she received were from the Petitioner and that she knew the messages were from the Petitioner because she recognized the cell phone number and the messages. The State offered the photographs as an exhibit, and trial counsel objected because counsel did not "know if they [were] all relevant," noting that there were thirty-eight pages of photographs. When the trial court asked if the messages were not relevant, counsel responded, "Well, they may be. I mean, the State's already admitted there's a lot of stuff that's mundane." The court overruled the objection but permitted counsel to raise specific objections as the photographs were published to the jury. The record does not reflect any further objections by counsel in connection with the admissibility of the photographs.

The record reflects that the victim sufficiently authenticated the text messages as having been received from the Petitioner's cell phone. Once authentication was satisfied, the jury decided whether the messages in the photographs were what they were purported to be by the victim. *See State v. Hinton*, 42 S.W.3d 113, 127 (Tenn. Crim. App. 2000). Likewise, the messages contained the Petitioner's statements, which were admissions by a party-opponent, and were therefore admissible hearsay evidence. As a result, the Petitioner failed to establish that trial counsel provided any deficient performance by failing to object on the grounds of authentication and hearsay. The record supports the post-conviction court's determination that the Petitioner failed to establish his ineffective assistance claim.

## B.     The Petitioner's File of Information

The Petitioner asserts that the file he provided to trial counsel contained information about the case and a list of potential character witnesses. The Petitioner argues that counsel failed to provide the contents of the file during the reciprocal discovery process to the

prosecution and that, as a result, the information was excluded from the trial. The Petitioner likewise asserts that counsel failed to subpoena any character witnesses from the list compiled by the Petitioner. We glean from the Petitioner's brief that the Petitioner's son was on the list as a potential defense witness.

The parties did not dispute at the post-conviction hearing that trial counsel did not provide the prosecution with any information during the discovery process. However, the Petitioner compiled a file with information about the case and with a list of potential defense witnesses. Although a duplicate file existed, it was not presented as evidence at the post-conviction hearing. The only evidence related to the contents of the file came from appellate counsel, who testified that the Petitioner had provided him with screenshots from Facebook, newspaper clippings, and "things of that nature." This court will not speculate about the substance of the information contained in the file. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Likewise, the Petitioner did not present any proposed character witnesses, including his son, at the post-conviction hearing, and this court will not speculate about the substance of any proposed testimony. *See id.* As a result, the Petitioner failed to establish any deficient performance resulted in prejudice. The record supports the post-conviction court's determination that the Petitioner failed to establish his ineffective assistance claim on this basis.

## C.     The Petitioner's Police Statement

The Petitioner asserts that trial counsel failed to object to the admission of his "alleged confession." In his brief, he does not state a legal basis for an objection to the admission of the statement. Tennessee Rule of Appellate Procedure 27(a)(7)(A) requires that an appellant's argument contain "citations to the authorities and appropriate references to the record . . . relied on." The rules of this court provide, "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived[.]" Tenn. Ct. Crim. App. R. 10(b). Notwithstanding the deficiency in the Petitioner's brief, we will consider the issue.

The record reflects that at the trial, Campbell County Sheriff's Detective Ricky Jeffers testified that he interviewed the Petitioner, that Detective Jeffers prepared a written statement based upon the interview, that the Petitioner reviewed the statement, and that the Petitioner signed the statement after being afforded the opportunity to make any necessary changes. At the post-conviction hearing, the Petitioner acknowledged that he signed the statement.

Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Hearsay is inadmissible unless it qualifies as an exception. *Id.* at 802. Although the Petitioner denied that he made the statement, by signing it, he "manifested

an adoption or belief in its truth," and it was offered by the State at the trial. *See* Tenn. R. Evid. 803(1.2)(B). The statement was admissible evidence. The record reflects, as well, that trial counsel attempted to impeach the reliability of the statement during cross-examination, establishing that the interview was not recorded, that the statement was written in Detective Jeffers's handwriting, and that the statement was not a verbatim account of the Petitioner's interview. As a result, the Petitioner failed to establish that trial counsel provided deficient performance resulting in prejudice. The record supports the post-conviction court's determination that the Petitioner failed to establish his ineffective assistance claim on this basis.

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE